Brittany Wood)

v.)   **PLAINTIFF'S FIRST**

Penobscot County Jail) **AMENDED COMPLAINT**

&)

Troy Morton)

**John Doe Guards/staff**

6/26/24

Plaintiff Brittany Wood, pro se, hereby complains against Troy Mortan and the Penobscot County Jail as follows:

## I. INTRODUCTION

In September of 2017 Brittany Wood was arrested and charged with a non-violent crime. This began a journey spanning nearly one year. During much of this year she was confined to the Penobscot County Jail where she suffered physical, psychological, and sexual abuse—all in violation of her 8th Amendment Rights under the Constitution of the United States.

This lawsuit seeks to make her whole for this pattern of flagrant violation of her civil rights and also to ensure that others do not have to experience the same. Brittany entered the Penobscot County jail as a healthy twenty-eight year old young woman with no history of medical issues. After only around eight weeks of incarceration, Brittany's medical health was so poor as to require that she be rushed by ambulance to Eastern Maine Medical Center where she received life-saving treatment. This medical emergency was the result of a deliberate indifference to her medical needs. As though her health issues brought on by the conditions at the Jail were not bad enough, she was also subjected to a pattern of sexual harassment that spanned the entirety of her time in the system.

PJC BANGOR COURTS
JUN 26 '24 PM4:11

## II. PARTIES

1. Plaintiff Brittany Wood is an individual residing in the Town of Eddington, County of Penobscot, and State of Maine.

2. Defendant Penobscot County Jail (hereafter "Jail") is a government agency located in the City of Bangor, County of Penobscot, and State of Maine.

3. Defendant Troy Morton was at all relevant times the Sheriff responsible for the operation of the Penobscot County Jail.

4. Defendants John Doe 1-4 are employees, agents, and/or contractors of the Penobscot County Jail.

### III. FACTS

5. In the fall of 2017 Plaintiff was arrested and incarcerated in the Penobscot County Jail.

6. At the time of her incarceration, and throughout her incarceration, Defendant Morton served as the Sheriff for Penobscot County.

7. Approximately two months after having been incarcerated Plaintiff began experiencing symptoms including but not limited to: persistent vomiting approximately every fifteen minutes, muscle contractions, amongst others.

8. Plaintiff repeatedly reported these symptoms to jail staff who demonstrated callous indifference and subjected her to ridicule, ultimately recommending she go on a liquid diet.

9. After multiple requests When Plaintiff eventually was given access to a nurse employed by the jail. The nurse informed Plaintiff that he believed she was feigning her symptoms and offered no medical assistance.

10. In subsequent days, Plaintiff's symptoms became more acute. Her muscles contracted painfully. Her ability to move became restricted and ultimately almost non-existent.

11. Despite these worsening symptoms, Plaintiff was unable to obtain further medical intervention. The Jail's nursing staff knew of her dangerously deteriorating condition and deliberately ignored the same.

12. Ultimately Plaintiff began to intermittently lose consciousness. During this time, Plaintiff as well as other inmates repeatedly reported these alarming escalating symptoms to Jail staff and administrators pleading for medical intervention. These pleas were deliberately ignored.

13. Jail staff and administrators exhibited a deliberate, and at times malicious, indifference to Plaintiff's pain and suffering. Rather than treating open and obvious symptoms of serious illness, Jail staff and administrators—including medical staff—told Plaintiff that they believed she was feigning illness and refused treatment. Her symptoms were exigent and apparent to even lay persons, including her fellow inmates.

14. Over the course approximately a week—during which time the Jail ignored and ridiculed Plaintiff for her symptoms, her health declined sharply and ultimately resulted in a life-threatening situation. The jail staff told the other inmates to take care of Plaintiff during this time. And they did, around the clock, emptying her puke bag and checking for a pulse.

15. On or about March 31st, 2018, Plaintiff's illness—ignored and mocked by Jail staff—progressed to a life and death situation. She was found passed out nearly dead. Finally, at that point, she was given emergency medical assistance and rushed to Eastern Maine Medical Center. At EMMC, Plaintiff was told by medical care staff that they were shocked that Jail staff had allowed her health to deteriorate to a "life or death" situation.

16. Though unwilling to provide basic medical care, Jail staff were more than willing to sexually harass Plaintiff. Sexual harassment was not, evidently, the strain on resources associated with basic health care. In addition to the deliberate and malicious indifference to her medical condition, Plaintiff was subjected to pervasive and frequent sexual harassment, including but not limited to sexual propositions, unnecessary observing of her showering, et cetera.

17. After having been discovered nearly dead, with extremities discolored and her body and muscles contracted, Plaintiff was transported by ambulance to EMMC. She was unconscious for an extended period of time. When she finally was revived, she learned that she had been diagnosed with Rhabdomyolisis as well as hypothermia and severe dehydration, amongst other things.

18. Plaintiff was admitted to the hospital for weeks, in the ICU for much of that time. The sheriff decided the jail could not "afford" to pay Mrs. Woods medical bills any longer, so he released her on medical bail. Plaintiff, no longer an inmate, still needed medical care.

19. During the time Plaintiff was incarcerated leading up to her hospitalization, Jail medical staff deliberately ignored plaintiff's pleas for medical assistance, mocked her, and accused her of dissembling.

20. Upon hospitalization Plaintiff learned that her medical conditions were sufficiently severe that she was diagnosed acute diastolic heart failure. Her life had been in jeopardy.

21. After her life-saving stay at EMMC, Plaintiff was briefly released only to be incarcerated where the same pattern of abuse resumed.

## IV. JURISDICTION

22. This is a civil action authorized by 42 U.S.C. Section 1983 to redress the deprivation, under color of state law, of rights secured by the Constitution of the United States.

## V. PRAYER FOR RELEIF

WHEREFORE, Plaintiff respectfully prays that this court enter judgment in her favor and against Defendants in such an amount as this Court deems just and reasonable, together with costs and fees.

_Brittany Wood_

PJC BANGOR COURTS
JUN 26 '24 PM 4:12